**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**DOSSIE LAYTON,** *et al.*                                    **PLAINTIFFS**

**vs.**                              **4:09CV00415-WRW**

**MARK STARRING & ASSOCIATES, INC.**                    **DEFENDANTS**
**and MARK STARRING**

<u>ORDER</u>

Pending is Defendants' Motion to Dismiss (Doc. No. 4). Plaintiffs have responded.[1] For

the reasons set out below, Defendant's Motion is GRANTED in part and DENIED in PART.

**I.      BACKGROUND**

Mark Starring is an individual resident of Louisiana and president of Mark Starring &

Associates, Inc. ("MSA").[2] Defendant MSA is incorporated in Louisiana.[3] MSA distributes and

markets artificial hips, knees, and other joint implants ("Orthopedic Devices"), as well as plates

and screws for traumatic orthopedic injuries ("Orthopedic Trauma Products"), manufactured by

DePuy Orthopedics, a division of Johnson & Johnson.[4] MSA distributes the Orthopedic Devices

and Trauma Products throughout Arkansas, with the exception of Crawford and Sebastian

Counties.[5] Plaintiffs signed a Representative Agreement with MSA, which was signed by

---

[1]Doc. No. 10.

[2]*Id.*

[3]Doc. Nos. 2, 3.

[4]*Id.*

[5]*Id.*

1

Defendant Mark Starring as president.[6]

Plaintiffs allege that MSA did not provide a complete copy of the Representative

Agreement (the "Agreement") until after Plaintiffs were forced to sign the signature page as a

prerequisite to getting a paycheck.[7] The Agreement contained a covenant not to compete, as well

as a requirement for Plaintiffs to meet sales objectives or goals set by MSA.[8]

Plaintiffs allege that throughout Plaintiff Dossie Layton's employment with MSA,

Defendant Mark Starring continuously harassed and subjected Layton to vulgar comments.[9]

Plaintiffs maintain that Starring's behavior created a hostile work environment for Layton.[10]

Layton allegedly complained to DePuy about Starring's behavior.[11] Defendants contend that

Layton was an independent contractor, as set out in the Agreement, and deny Plaintiffs

allegations that Starring harassed Layton.[12]


In a March 30, 2009, letter, MSA terminated the Agreement with Plaintiffs.[13] As reasons

for the termination, MSA cited Plaintiffs failure to meet sales goals as required by Section III of

---

[6]*Id.*

[7]Doc. No. 2.

[8]*Id.*

[9]*Id.*

[10]*Id.*

[11]*Id.*

[12]Doc. Nos. 5, 11.

[13]Doc. No. 2.

2

the Agreement, and Plaintiffs' violation of the covenant not to compete in Section VIII of the Agreement.[14]

Plaintiffs contend that any sales goals were met, and that Plaintiffs did not violate the covenant not to compete. Plaintiffs maintain that MSA terminated the Agreement in retaliation for Layton's complaints to DePuy about Starring's behavior.[15] Plaintiffs sued Defendants for breach of contract, declaratory judgment, violations of the Arkansas Civil Rights Act, and for the tort of outrage.[16]

## II.   LEGAL STANDARD

In ruling on a Rule 12(b)(6) motion to dismiss, the court "accept[s] as true all of the factual allegations contained in the complaint, and review[s] the complaint to determine whether its allegations show that the pleader is entitled to relief."[17]  All reasonable inferences from the complaint must be drawn in favor of the nonmoving party.[18]  A motion to dismiss should not be granted merely because the complaint "does not state with precision all elements that give rise to a legal basis for recovery."[19]  A complaint need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief.'"[20]  "[O]nce a claim has been stated

---

[14]*Id.*

[15]*Id.*

[16]*Id.*

[17]*Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008).

[18]*Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004).

[19]*Schmedding v. Tnemec Co. Inc.*, 187 F.3d 862, 864 (8th Cir. 1999).

[20]*Id.* (quoting Fed. R. Civ. P. 8(a)).

adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."[21] "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[22]

Under the *Twombly* "plausibility standard," the allegations in Plaintiffs' Complaint must be evaluated to determine whether they contain facts sufficient to "nudge[] [his] claims across the line from conceivable to plausible."[23]

## III.   DISCUSSION

Defendants assert that Plaintiffs' outrage claim against both Defendants, as well as Plaintiffs' ACRA claim against Defendant Mark Starring, should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

### A.     Outrage

Plaintiffs agree that any their claim of outrage against MSA should be dismissed. Accordingly, Plaintiffs' claim of outrage against Defendant MSA is dismissed.

Plaintiffs allege Defendant Starring systematically and habitually used extreme vulgar

---

[21]*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007) (overruling language from *Conley v. Gibson,* 78 S. Ct. 99, 102 (1957), which stated, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

[22]*Id.* at 1964-65 (citations omitted).

[23]*Id.* at 1974.

4

language towards her.[24] Plaintiffs' Complaint identifies the alleged vulgar language as the basis of Plaintiffs' outrage claim against Starring.[25] Defendants maintain that the vulgar comments alone do not rise to the tort of outrage under Arkansas law in the employer-employee context.[26]

In general, I agree with Defendants that vulgar or abusive language alone, in an employer-employee relationship, would not give rise to a claim of outrage under Arkansas law. But, claims of outrage are fact intensive and decided on a case-by-case basis.[27]  While abusive language alone may not rise to the level of outrage, abusive language coupled with an employer's knowledge that an employee is "peculiarly susceptible" to emotional distress might rise to the level of outrageous behavior.[28]  Plaintiffs pled the elements of outrage, and allege facts sufficient to make their claim plausible enough to pass Rule12(b)(6)'s fairly low hurdle.

**B.**    **Arkansas Civil Rights Act ("ACRA")**

Allegations of discrimination under the ACRA are analyzed in the same manner as Title

---

[24]Doc. No. 2.

[25]*Id*.

[26]Doc. No. 5.

[27]*Smith v. American Greetings Corp*., 304 Ark. 596, 602 (1991).

[28]See *id*.

VII claims.[29] There is no individual liability under Title VII.[30] "Supervisors may not be held individually liable under Title VII."[31]

Plaintiffs Complaint identifies Starring as the President of MSA.[32] Plaintiffs entered into a contract with MSA, signed by Starring as president.[33] In connection with Plaintiff's ACRA claim, Plaintiffs' Complaint reads: "[t]he actions of Starring, as president of MSA, subjected Layton to a hostile work environment. MSA terminated Plaintiffs in retaliation for Layton reporting Starring's behavior . . . ."[34]

Plaintiffs assert that they are without sufficient information to know whether Starring or MSA was Plaintiffs employer, and that MSA was not authorized to do business in Arkansas.[35] Plaintiffs further contend that because the issue of whether a supervisor can be held individually liable under the ACRA is before the Arkansas Supreme Court, Plaintiffs' ACRA claim against Starring should be allowed to stand.[36]

On October 30, 2008, the Arkansas Supreme Court granted a motion to withdraw the

---

[29]*Island v. Buena Vista Resort*, 352 Ark. 548 (2003); *Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 615 n.3 (8th Cir. 2000).

[30]See *Bales v. Wal-Mart Stores*, 143 F.3d 1103, 1111 (8th Cir. 1998).

[31]*Id.*

[32]*Id.*

[33]Doc. No. 2.

[34]*Id.*

[35]Doc. No. 10.

[36]*Id.*

certified question of law regarding a supervisor's individual liability.[37] Thus, that issue is not pending before the court. If Starring acted as supervisor, but not employer, Plaintiffs' ACRA claim against him fails because there is no supervisor liability under Title VII.

I do not read Plaintiffs' Complaint as alleging Starring, in his individual capacity, was Plaintiffs' employer.[38] Rather, the Complaint alleges MSA was the employer. For example: the Agreement attached to the Complaint is between Plaintiffs and MSA; Plaintiffs allege facts that bring MSA under ACRA's definition of employer; and Plaintiffs' breach of contract claim focuses on MSA's actions. Because there is no individual liability under Title VII, and the ACRA is analyzed in the same manner as Title VII, Plaintiffs' ACRA claim against Starring in his individual capacity fails.

## CONCLUSION

Based on the findings of fact and conclusions of law above, Defendants' Motion is GRANTED in connection with Plaintiffs' outrage claim against MSA, and Plaintiffs' ACRA claim against Starring. Those claims are dismissed. Defendants' Motion is DENIED with respect to Plaintiffs' outrage claim against Starring.

IT IS SO ORDERED this 7th day of July, 2009.


/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

---

[37]*Billy Battles v. Mark Townsend*, 5:08-CV-00117-JMM, Doc. No. 26 filed on November 10, 2008 (ED Ar. 2008).

[38]The ACRA defines employer as "a person who employs nine (9) or more employees in the State of Arkansas in each of twenty (20) or more calendar weeks in the current or preceding calendar year, or any agent of such person." Ark. Code Ann. § 16-123-102(5).